IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Criselda Reyes, Emmanuel Reyes, | ) | C/A No. 2:21-CV-00520-DCN-MGB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Dorchester County of South Carolina, Mike | ) | |
| Goldston, *Dorchester County Public Works* | ) | |
| *Engineering Manager*; Jason Carraher, | ) | |
| *Dorchester County Public Works Director*; | ) | |
| Jason L. Ward, *Dorchester County* | ) | |
| *Administrator*; John Frampton, *Dorchester* | ) | |
| *County Attorney*, | ) | |
| | ) | |
| Defendants. | | |

Plaintiffs Criselda Reyes and Emmanuel Reyes, appearing *pro se*, filed this action under

42 U.S.C. § 1983, regarding the alleged improper regulation of Plaintiffs' private property. (Dkt.

No. 14.) Before the Court is Defendants' Motion to Dismiss. (Dkt. No. 23.) All pretrial proceedings

in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A)

and (B) and Local Rule 73.02(B)(2)(e), DSC. For the reasons set forth below, the undersigned

recommends Defendants' Motion be granted in part and denied in part.

## BACKGROUND

This civil action arises out of the alleged improper regulation of Plaintiffs' private property,

a single-family home (the "Premises") located on Hillside Farms Subdivision in Dorchester

County, South Carolina. (Dkt. No. 14 at 3.) Plaintiffs allege that Criselda Reyes has owned the

home since December of 2019, and that she and "members of her family" have occupied the home

since March of 2020. (*Id.*) Plaintiffs allege that they reviewed the "closing escrow documents with

their closing attorney" in December of 2019, and that the "private backyard ditch" on their property was "NEVER 'Recorded' or 'Deeded' with a Stormwater Detention or Retention Pond aka 'Stormwater Management Facility' for the Hillside Farms HOA subdivision community as 'Public Use.'" (*Id*.)

According to Plaintiffs, they "started experiencing the overflowing stormwaters arising from the Premises' stormwater ditch" in March of 2020, and the "source of the overflow was blockage to one of the pipe systems previously approved by the County." (*Id*.) "In May of 2020, Plaintiffs activated a FEMA flood insurance policy to protect their home from overflowing County and Hillside Farms subdivision stormwaters." (*Id*. at 4.) In June of 2020, Plaintiffs installed artificial grass in their backyard "as a deterrent to the stormwaters retained in the ditch," but it did not successfully control the flooding. (*Id*.) Plaintiffs then "consulted with several experienced drainage and landscaping contractors for solutions to the stormwater encumbrance and stormwater intrusions." (*Id*.) According to Plaintiffs, one of the contractors used a shovel to discover a "tennis ball-size hold on the bottom of the 4-ft knockout wall of precast concrete box, buried 2 feet in mud as the Root Cause [sic] of improper stormwater drainage and stormwater intrusions into the Premises." (*Id*. at 5 (internal quotation marks omitted).)

Plaintiffs resolved the issue in August of 2020, when they

> hired experienced South Carolina Department of Transportation drainage contractors who recommended proper stormwater maintenance by connecting the only two recorded 20-ft drainage easements using high-density polyethylene 20-ft long corrugated stormwater drainage (24" diameter) pipes to solve stormwater intrusions and protect the Premises. . . . This entire stormwater drainage maintenance improvement was documented and photographed thru [sic] its completion.

(*Id*.)

Plaintiffs allege that on September 1, 2020, they "witnessed and video recorded two unidentified individuals"[1] who entered the back of the Premises after gaining access through neighboring properties. (*Id.*) Plaintiff alleges these individuals conducted an "unlawful search and surveillance on the Premises." (*Id.*) In early September of 2020, Defendant Mike Goldston, Dorchester County Public Works Engineering Manager, sent Plaintiffs "Demand Letters," which stated that by filling in the "stormwater pond" on the Premises, Plaintiffs directly violated "Dorchester County Stormwater Management Program Ordinance #07-21." (*Id.* at 5.) This Ordinance provides, in relevant part,

> No person shall create or cause a blockage of an open channel or pipe system used to convey or transport stormwater runoff from one property to another separately owned property.

> No person shall modify the topography of a property such that storm water runoff is diverted from its original path such as to cause it to be directed on an adjacent property.[2]

(*Id.* at 4.)

Mr. Goldston also wrote in his Demand Letters that "fines up to one thousand dollars . . . per violation/day may be assessed for failure to restore the stormwater detention/retention pond on the Premises to its original condition in 48 hours." (*Id.* at 5–6.) In September of 2020, Plaintiffs appealed Mr. Goldston's Notice of Violation in a letter to Defendants Jason L. Ward and John

---

[1] The Amended Complaint letter alleges that Defendant Goldston entered "Plaintiffs' private property" with a colleague "on Sept. 1st and Sept. 8th, 2020 . . . without an Administrative warrant, without permission and without legal justification." (Dkt. No. 14 at 12.)

[2] Dorchester County Ordinance 07-21 can be found online. *See* https://library.municode.com/sc/dorchester%20county/codes/code_of_ordinances?nodeId=COOR_CH36STMA. Because this Ordinance is integral to the Amended Complaint and the parties have not disputed its authenticity, the undersigned considers it without converting Defendants' motion into one for summary judgment. *See Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019).

Frampton. (*Id*. at 6.) Mr. Ward is a Dorchester County Administrator and Mr. Frampton is a Dorchester County Attorney.

That same month, Mr. Ward sent Plaintiffs a "Response Demand Letter," stating that "the issuance of the Notice of Violation . . . was justified and appropriate." (*Id*.) Plaintiffs then made several Freedom of Information Act ("FOIA") requests "for related Stormwater Management Plan and documents" on the Premises, and Defendant Dorchester County responded that the documents were unavailable. (*Id*. at 6–7.) Plaintiffs allege that in October of 2020, they invited Defendants Goldston and Frampton to their house "in an attempt of finding common-sense solutions." (*Id*. at 7.) Plaintiffs allege that at that meeting, Mr. Frampton "emphasized the pursuant [sic] of criminal charges unless 'stormwater detention/retention pond' is fully restored in original condition." (*Id*.) Plaintiffs allege Mr. Goldston sent them another Demand Letter reiterating the civil penalty charges for "each day you remain in violation" and stating the "County is willing to forgive the civil penalties as they accrue, if you complete restoration of the stormwater management facility as it existed and was approved for the subdivision within 30 days of the date of this letter." (*Id.*) Mr. Frampton sent Plaintiffs a Demand Letter in December of 2020 stating, *inter alia*,

> Pursuant to Dorchester County's Stormwater Management Ordinance whether or not an easement exists is irrelevant to the issue of your client's alteration of an existing stormwater management facility which served this 16-lot subdivision. In fact, Dorchester County seldom if ever owns stormwater management facilities such as detention/retention ponds which serve subdivisions. Nonetheless, a property owner is not authorized to fill or alter such a stormwater management facility which serves the subdivision. . . . Civil penalties in the amount of $1000 per day will continue to accrue and will be collected according to law.

(*Id.* at 8.)

Plaintiffs made another FOIA request to Mr. Frampton in January of 2021, and he responded via email, ". . . there has been no condemnation on LOT 10 and therefore there are no

documents responsive to your [FOIA] request. As I have repeatedly said, there has been no taking. Therefore, there are no documents." (*Id.*) In March of 2021, Plaintiffs received another Notice of Violation from South Carolina Department of Health and Environmental Control ("DHEC") which "email-copied" Mr. Goldston. (*Id.*) Plaintiffs allege that "the enforcement action undertaken by Dorchester County Public Works reveals an actual controversy related to the invasion of Plaintiffs' constitutionally protected property rights." (*Id.*) Plaintiffs assert that in an affidavit by Mr. Gary F. Berenyi, dated October 30, 2019, Mr. Berenyi avers that the Final Subdivision Plat approved by the Dorchester County Planning Commission did not identify an easement or a retention pond located on Plaintiffs' property. (*Id.* at 8–9.) Plaintiffs have attached Mr. Berenyi's affidavit to their Amended Complaint as well as the referenced Plat. (Dkt. No. 14-1 at 1, 3–4.) Mr. Berenyi's affidavit was issued in connection to a difference case in state court. (*Id.* at 3.)

The Amended Complaint alleges § 1983 claims against Defendant Dorchester County for violation of Plaintiffs' Fourth Amendment rights: (1) for maintaining a policy that "its Ordinance Enforcement officers may effectuate warrantless entry onto the private property of citizens within Dorchester County"; and (2) for failing to train "its Ordinance Officials." (Dkt. No. 14 at 9–11.) It also alleges § 1983 claims against Dorchester County for violation of Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights by enacting Ordinance #07-21, which Plaintiffs allege "is illegal, unconstitutional and without force of law." (*Id.* at 13–14.) Plaintiffs allege the Ordinance seeks "to create retroactive penal regulation regarding private property in violation of prohibition against Ex Post Facto Laws" and constitutes a "Regulatory Taking." (*Id.*)

The Amended Complaint alleges § 1983 claims against Defendants Goldston, Carraher, Ward and Frampton for violation of Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights.[3] (*Id.* at 12–13.) Here, the Amended Complaint alleges that Mr. Goldston made an improper warrantless entry and search "with a colleague onto Plaintiffs' private property" in September of 2020. (*Id.* at 12.) The Amended Complaint alleges Defendants Carraher, Ward, and Frampton "are in full support of Mr. Goldston's actions constituted [sic] violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments." (*Id.*) The Amended Complaint further alleges that the individual Defendants violated Plaintiffs' Fifth and Fourteenth Amendment rights in that the "County's communications and demands from the Defendants, Dorchester County officials, constitute a public taking." (*Id.* at 12–14.)

On May 7, 2021, Defendants filed their Motion to Dismiss. (Dkt. No. 23.) Plaintiffs filed their response in opposition to the Motion on June 11, 2021 (Dkt. No. 31), to which Defendants replied on June 18, 2021 (Dkt. No. 32). Plaintiffs filed a sur-reply brief on June 24, 2021. (Dkt. No. 33.) The Motion has been fully briefed and is ready for review.

## STANDARD OF REVIEW

Defendants seek dismissal of this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. "Standing implicates the court's subject matter jurisdiction and is governed by Federal Rule of Civil Procedure 12(b)(1)." *Middleton v. Andino*, 488 F. Supp. 3d 261, 278 (D.S.C. 2020), *appeal dismissed as moot*, 2020 WL 8922913 (4th Cir. Dec. 17, 2020). A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

---

[3] Here, the undersigned liberally construes the pleadings to allege a § 1983 claim that the individual Defendants violated Plaintiffs' rights under the Fifth Amendment in addition to the Fourteenth Amendment.

*Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. County Commissioners of Carroll County, Maryland*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the Court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

Because Plaintiffs are representing themselves, these standards must be applied while liberally construing their filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The parties have submitted several documents with their briefings here. "Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . .'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). The Court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. "To be 'integral,' a document must be one 'that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Brennan*, 361 F. Supp. 3d at 502 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)). The documents considered herein are either explicitly incorporated into the complaint by reference or are integral to the complaint and there is no dispute about their authenticity.

## DISCUSSION

In their Motion, Defendants argue that Plaintiff Emmanuel Reyes lacks standing and should be dismissed from this action. (Dkt. No. 23 at 2–3.) They also argue dismissal of this action is appropriate because: (1) Plaintiffs cannot establish a violation of the ex post facto law; (2) Plaintiffs fail to allege sufficient facts to establish violations of their rights under the Fourth, Fifth, and Fourteenth Amendments; (3) Defendants Goldston is entitled to qualified immunity on all claims asserted against him; (4) Plaintiffs fail to allege sufficient facts to establish any claims

against Defendants Ward, Carraher, and Frampton; and (5) Plaintiffs fail comply with the South Carolina Tort Claims Act. (Dkt. No. 23.)

The undersigned considers these arguments below.

## A.    Standing

Defendants first move to dismiss Plaintiff Emmanuel Reyes as a party to this action because he does not have legal standing to assert claims against Defendants. (Dkt. No. 23 at 3.) To invoke federal jurisdiction, a plaintiff bears the burden of establishing the three "irreducible minimum requirements" of Article III standing:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotations and citations omitted).

Here, the Complaint alleges violations of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments. Because Defendants are state actors, Plaintiffs' Fifth Amendment claims are governed by the Fourteenth Amendment. *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163–64, (1998) ("The Fifth Amendment [was] made applicable to the States through the Fourteenth Amendment.") (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897)).

In their Motion, Defendants provide no discussion specific to the claims in this action. Rather, Defendants cite the allegation in the Amended Complaint that "Ms. Criselda Reyes is the

owner of" the property at issue. (*Id.*; Dkt. No. 14 at 3.) According to Defendants, this allegation is "*prima facie* evidence that Mr. Reyes does not have standing." (Dkt. No. 23 at 3.) Plaintiffs respond that they are "legal marital-property owners" of the property at issue and both of their names "are on utility bills as required by utility companies." (Dkt. No. 31 at 1.) In their reply brief, Defendants contend that Mr. Reyes' claim to the home as marital property does not establish standing. (Dkt. No. 32 at 2.)

More specifically, Defendants cite South Carolina Code Ann. § 20–3–630, which defines "marital property" as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation." Courts have applied this statute to find that marital property rights do not amount to ownership rights until the filing or commencement of marital litigation occurs. *See United States v. Schifferli*, 895 F.2d 987, 989 (4th Cir. 1990) (finding spouse of claimant lacked standing to contest forfeiture of marital property because she "has not filed or commenced marital litigation" and therefore "she has no interest in the property at stake"); *United States v. Alquzah*, 91 F. Supp. 3d 818, 829 (W.D.N.C. 2015) ("[R]egardless of whether a spouse's marital property rights are described as unvested, inchoate, or by some other similar term, such rights generally do not amount to an ownership interest in specific property for purposes of standing to challenge federal forfeiture unless and until there is an event, such as separation, that triggers the statutory authority for the state court to make an equitable distribution"; "South Carolina marital property law . . . does not give [spouse] a legal interest in the property").

To assert a Fourteenth Amendment due process claim, a plaintiff must establish he has a property interest that was infringed upon. *See Monitech Inc. v. Robertson*, 841 F. Supp. 2d 919,

10

923–24 (E.D.N.C. 2012) (in determining whether the plaintiff had constitutional standing, the court recognized that "[t]o make a valid substantive due process claim, Plaintiff must show that it had either property or a property interest, of which it was deprived by Defendant, where Defendant's actions 'f[e]ll so far beyond the outer limits of a legitimate governmental action that no process could cure the deficiency.'") (quoting *Sylvia Dev. Corp. v. Calvert Cty*., 48 F.3d 810, 827 (4th Cir. 1995)). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 146 (4th Cir. 2018) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). To show they have a property interest in a benefit, a party "must have more than a unilateral expectation of it . . . [and] must, instead, have a legitimate claim of entitlement to it." *Monitech Inc*., 841 F. Supp. 2d at 924 (quoting *Roth*, 408 U.S. at 577).

However, to establish a Fourth Amendment violation, "a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable expectation of privacy in it." *Byrd v. United States*, — U.S. —, 138 S. Ct. 1518, 1526, 200 L. Ed. 2d 805 (2018) ("Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest.").

As discussed above, Defendants make no argument specific to the claims in this action. Rather, they generally assert that Mr. Reyes does not have a legal property interest in the Premises at issue, and therefore, he does not have standing in this action. Because the Complaint alleges that Ms. Reyes owns the Premises and it does not allege Plaintiffs have filed or commenced marital litigation, the undersigned finds Mr. Reyes does not have an ownership interest in the Premises.

Based on the foregoing, the undersigned recommends Mr. Reyes does not have standing to assert any claims based on violations of his rights under the Fifth and Fourteenth Amendments. However, it would be premature to dismiss Mr. Reyes' claims for violation of his rights under the Fourth Amendment. Defendants have not offered any arguments specific to this claim, and the lack of a legal property interest in the place searched does not automatically negate standing here. Accordingly, liberally construing the pleadings in this case, the undersigned recommends Mr. Reyes be dismissed as a party only with respect to the claims based on the Fifth and Fourteenth Amendments.

**B.      Violation of Ex Post Facto Law**

Defendants next argue that Plaintiffs cannot establish a violation of the ex post facto law. Here, they reference the portion of the Amended Complaint alleging that Dorchester County Ordinance 07-21 "seek[s] to create retroactive penal regulation regarding private property in violation of prohibition against ex post facto laws." (Dkt. No. 14 at 14.)

The Constitution prohibits States from enacting Ex Post Facto laws. U.S. Const. art. I, § 10, cl. 1. "To fall within the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations and internal quotation marks omitted). *See also Collins v. Youngblood*, 497 U.S. 37, 43 (1990) (holding that the Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts").

In their Motion, Defendants assert that the Ordinance was enacted a decade before Ms. Reyes purchased her home, and therefore, it cannot be considered an ex post facto law as applied

to Plaintiffs. (Dkt. No. 23 at 4.) In response, Plaintiffs assert Defendants' "several demand letters and emails" threatening Plaintiffs with criminal prosecution and fines "constitute a regulatory taking." (Dkt. No. 31 at 2.) Plaintiffs do not dispute the date the Ordinance was enacted. Public record indicates Dorchester County Ordinance 07-21 was enacted on August 20, 2007. There is no indication it has been altered since that time. Plaintiffs allege they purchased the Premises in December of 2019. Given these facts, the undersigned cannot find Ordinance 07-21 constitutes an ex post facto law. Accordingly, the undersigned recommends any claims for violation of the prohibition against ex post facto laws be dismissed.

### C.  Violation of Fourth Amendment

Defendants next argue that Plaintiffs fail to allege sufficient facts to establish violations of their rights under the Fourth Amendment. The Amended Complaint alleges Dorchester County violated Plaintiffs' Fourth Amendment rights by: (1) maintaining a policy that "its Ordinance Enforcement officers may effectuate warrantless entry onto the private property of citizens within Dorchester County"; and (2) failing to train "its Ordinance Officials." (Dkt. No. 14 at 9–11.) Relatedly, it alleges that Ordinance 07-21 is unconstitutional under the Fourth Amendment. (*Id.* at 13–14.) The Amended Complaint further alleges that the individual Defendants violated Plaintiffs' Fourth Amendment rights. Specifically, it alleges that Mr. Goldston made improper warrantless entries and searches "with a colleague onto Plaintiffs' private property" in September of 2020. (*Id.* at 12.) It alleges that Defendants Carraher, Ward, and Frampton "are in full support of Mr. Goldston's actions constituted [sic] violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments." (*Id.*)

### 1.       Dorchester County

Defendant Dorchester County is a local government entity. In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978), the Supreme Court concluded that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Pursuant to *Monell*, a municipality or other local government entity may be liable under § 1983 for the violation of a plaintiff's constitutional rights, but only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom. *See Monell*, 436 U.S. at 694; *see also Knight v. Vernon*, 214 F.3d 544, 552 (4th Cir. 2000). A plaintiff may demonstrate the existence of an official policy in three ways: (1) an express policy; (2) certain affirmative decisions of policymaking officials; and (3) a widespread practice that is so engrained it constitutes a custom, including omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). A policy or custom that gives rise to § 1983 liability will not "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984); *see Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014) ("Sporadic or isolated violations of rights will not give rise to *Monell* liability . . . ."). Rather, only "'widespread or flagrant'" misconduct suffices. *Owens*, 767 F.3d at 403 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

Beyond an unconstitutional practice or custom, an entity may also be liable under *Monell* for its inaction, where its omissions constitute deliberate indifference to constitutional injuries. For instance, the failure to train, supervise, or discipline officers can support liability under *Monell*.

*See Connick v. Thompson*, 563 U.S. 51, 61 (2011) However, for an entity's failure to train its employees to rise to a constitutional violation, the failure "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (alteration in *Connick*); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees . . . evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

As noted above, the Amended Complaint alleges Fourth Amendment violations against Dorchester County both for maintaining an unconstitutional policy and for failing to train its "Ordinance Officials." (Dkt. No. 14 at 9–11.) Here, the Amended Complaint indicates that Ordinance 07-21 is the policy or custom that is the "moving force" behind the constitutional violations at issue. *Spell*, 824 F.2d at 1387 (a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation") (internal citations omitted). Thus, the issue is whether warrantless searches conducted under Ordinance 07-21 violate the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Supreme Court has held that "in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538 (1967) (involving

15

warrantless administrative inspection to ensure compliance with city housing code)). More specifically, "in the context of safety and administrative regulations, a search unsupported by probable cause may be reasonable 'when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 829 (2002) (quoting *Griffin*, 483 U.S. at 873). "The lynchpin of the court's inquiry in all special needs cases is whether it is impracticable to require a warrant in light of the primary purpose of a programmatic search." *United States v. Curry*, 965 F.3d 313, 320 n.4. (4th Cir. 2020), *as amended* (July 15, 2020), *as amended* (July 16, 2020). Further, "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 420 (2015).

Here, Defendants argue that searches conducted pursuant to Ordinance 07-21 are authorized by the Declaration of Restrictive Covenants ("DRC"), which "grants the Corps [of Engineers], DHEC and their authorized agents the right to enter onto the land to inspect the property" to ensure compliance with the terms of the DRC. (Dkt. No. 23 at 7.) Specifically, the DRC applies to the land on which Hillside Farms Subdivision is located and it prohibits the "filling, . . . constructing, . . . [and] changing the grade or elevation, impairing the flow or circulation of waters, reducing the reach of waters, and any other discharge or activity requiring a permit under clean water or water pollution control laws and regulations."[4] (*Id*. at 6–7.)

---

[4] Defendants assert that the DRC is found in Book 4415, Page 149 of the Dorchester County Register of Deeds and that, as a public document, it can be considered under Rule 12(b)(6). (Dkt. No. 23 at 6.)

Defendants further argue that the warrantless searches at issue constitute administrative searches in compliance with the special needs doctrine. (*Id.* at 8–11.) In support, Defendants cite the Stormwater Management and Sediment Reduction Act ("the Act"), which allows DHEC to "delegate any or all components of stormwater management and sediment control programs to a local government or conservation district pursuant to regulations promulgated by the department." S.C. Code Ann. § 48-14-60. As highlighted by Defendants, the Act also allows "the implementing agency . . . the right of entry for the purpose of determining if a land disturbing activity is being conducted without an approved stormwater management and sediment control plan, conducting inspections and taking enforcement actions." S.C. Code Ann. § 48-14-95. Defendants contend that "Dorchester County promulgated their own administrative scheme in 2007 via Ordinance 07-21" to implement the Act. (Dkt. No. 23 at 10.) *See* S.C. Code Ann. § 48-14-60. According to Defendants, the "searches performed at Plaintiff's property were to investigate infractions to this legitimate administrative scheme." (Dkt. No. 23 at 11.)

In response, Plaintiffs appear to assert that it was Defendants' deviation from the policy that violated their constitutional rights. Specifically, Plaintiffs assert that Defendant Goldston did not comply with the terms of Ordinance 07-21 because he did not notify Plaintiffs about the searches before they took place. (Dkt. No. 31 at 3.) Specifically, Ordinance 07-21 § 5.2(a) provides that when conducting "periodic investigations, monitoring, . . . enforcement, . . . [t]he director will duly notify the owner of said property or the representative on site." (*Id.*) Section 5.2(b) of the Ordinance further provides:

> Upon refusal by any property owner to permit an inspector to enter or continue an inspection, the inspector may terminate the inspection or confine the inspection to areas concerning which no objection is raised. The inspector should immediately

report the refusal and the grounds to the director. The director will promptly seek the appropriate compulsory process.

Plaintiffs also vaguely assert that "certain individuals in the neighborhood working with the Defendants are exemplifications of forms of racial microaggression." (*Id.*)

Upon careful review, and even when construing the allegations in the light most favorable to Plaintiff, the undersigned finds that searches performed pursuant to Ordinance 07-21 constitute administrative searches in compliance with the special needs doctrine. Ordinance 07-21 was enacted to ensure compliance with the Stormwater Management and Sediment Reduction Act, and it provides the subject of the search an opportunity to obtain precompliance review before a neutral decisionmaker. *See Patel*, 576 U.S. at 420 (finding a municipal ordinance that authorized police officers to perform warrantless searches of hotel records "serve[d] a 'special need' other than conducting criminal investigations and constituted an "administrative search"; administrative searches, in which "the 'primary purpose' of the searches is 'distinguishable from the general interest in crime control,'" constitute a warrant exception); *Camara*, 387 U.S. at 539–40 (discussing administrative search of residential premises to ensure compliance with a housing code; "Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry"). Accordingly, this policy, in and of itself, does not violate the Fourth Amendment, and no municipal liability exists based on the policy alone.

However, the Amended Complaint also asserts a § 1983 claim against Dorchester County for failure to train "its Ordinance Officials with regard to the making of searches and inspection of private property." (Dkt. No. 14 at 11.) With respect to this claim, the Amended Complaint alleges

Defendant Dorchester County's failure to train its Ordinance Officials . . . was the result of its deliberate indifference to the Constitutional rights of the citizens of Dorchester County, including Plaintiffs. Defendant Dorchester County's failure to train its Ordinance Officials . . . was the direct cause of the Defendant Mr. Goldston and colleagues as Dorchester County Public Works Ordinance Enforcement Officers actions on Sept. 1st and Sept. 8th, 2020, and other dates from County's surveillance photos as complained above, and as such, resulted in the violation of Plaintiffs' rights under the Fourth Amendment of the United States Constitution subjecting it to liability under 42 U.S.C. § 1983.

(*Id.*)

As discussed further below, the undersigned recommends that, at this stage in the proceedings, Plaintiffs have sufficiently alleged a Fourth Amendment violation by Defendant Goldston based on his failure to notify Plaintiffs of the administrative searches prior to their execution, in deviation from Ordinance 07-21. Plaintiffs indicate that Mr. Goldston's deviation from the Ordinance was caused by Dorchester County's failure to train its Ordinance Officials with regard to the making of searches and inspection of private property. These allegations, combined with those quoted above, are sufficient to establish *Monell* liability based on a failure to train. *See*, *e.g., Crittenden v. Florence Sch. Dist. One*, No. 4:16-CV-02014-RBH, 2017 WL 698647, at *3 (D.S.C. Feb. 22, 2017) (denying motion to dismiss § 1983 municipal liability claim where "Plaintiff alleges that the District did not have adequate training and procedures in place to handle students with behavioral issues; or if it did, those policies were not enforced or adequately explained to its employees."); *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 540 (E.D. Va. 2015) (denying motion to dismiss § 1983 municipal liability claim based on failure to train where "Plaintiff has alleged a sufficient factual basis to satisfy the deliberate indifference element of a failure-to-train claim through his allegations concerning an obvious constitutional duty the City's officers were certain to face").

Accordingly, the only Fourth Amendment claim against Defendant Dorchester County that should proceed is the § 1983 claim for failure to train.

### 2.    Individual Defendants

As noted above, the Amended Complaint alleges Defendant Goldston made improper warrantless entries and searches "with a colleague onto Plaintiffs' private property" in September of 2020, in violation of the Fourth Amendment. (*Id*. at 12.) The Amended Complaint alleges Defendants Carraher, Ward, and Frampton "are in full support of Mr. Goldston's actions constituted [sic] violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments." (*Id.*)

### a.    Defendants Ward, Carraher, and Frampton

Defendants first argue that Plaintiffs have failed to sufficiently plead any § 1983 claims against Defendants Ward, Carraher, and Frampton. "The law is clear that personal participation of a defendant is a necessary element of a Section 1983 claim against government officials in their individual capacities." *Blessing v. Scaturo*, No. 6:16-cv-1832-BHH-KFM, 2017 WL 3575734, at *9 (D.S.C. July 28, 2017) (citing *Trulock v. Free*, 275 F.3d 391, 402 (4th Cir. 2001)), *adopted by*, 2017 WL 3535104 (D.S.C. Aug. 17, 2017). "In order for an individual to be liable under Section 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights, [and the defendant] must have had personal knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights . . . .'" *Id*. (quoting *Harbeck v. Smith*, 814 F. Supp. 2d 608, 627). "The Fourth Circuit further described this requirement as 'designed to ensure that the serious burdens of defending against this sort of lawsuit are vested upon a department supervisor only when the complaint plausibly suggests that the supervisor engaged in his or her own misconduct.'" *Id.* (quoting *Evans v. Chalmers*, 703 F.3d 636, 661 (4th Cir. 2012)).

As Defendants argue, the Amended Complaint fails to allege any conduct by Ward, Carraher, or Frampton, amounting to a Fourth Amendment violation. (Dkt. No. 23 at 16–17.) In their response brief, Plaintiffs assert Mr. Ward's Response Demand Letter and Mr. Frampton's Demand Letter, both constitute a regulatory taking. (Dkt. No. 31 at 8–9.) However, such claims would be considered under the Fifth and Fourteenth Amendments. Plaintiffs further assert that Mr. Carraher "is also fully responsible for the actions and/or wrongdoings of his direct reports." However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). Instead, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*.

In short, the Amended Complaint does not sufficiently allege any violation of Plaintiffs' rights under the Fourth Amendment by Defendants Ward, Carraher, and Frampton. Accordingly, any § 1983 claims against these Defendants based on the Fourth Amendment should be dismissed.

### b.    Defendant Goldston

Defendants next argue that Mr. Goldston did not violate the Fourth Amendment and that, if he did, he is entitled to qualified immunity because "it was not a clearly established right in a manner Mr. Goldston could have reasonably been aware of it." (Dkt. No. 23 at 16.)

"Qualified immunity shields police officers who commit constitutional violations from liability when, based on 'clearly established law,' they 'could reasonably believe that their actions were lawful.' *Est. of Jones by Jones v. City of Martinsburg, W. Virginia*, 961 F.3d 661, 667 (4th Cir. 2020), *as amended* (June 10, 2020) (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017)); *see also Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are

not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). To determine whether qualified immunity applies, courts conduct a two-step inquiry, in either order: (1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation. *Jones*, 961 F.3d at 667. 'We do not require a case directly on point' in order to conclude that the law was clearly established so long as 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)); s*ee also Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 734 (4th Cir. 2013) ("We repeatedly have held that it is not required that a right violated already have been recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity. . . . [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." (internal quotations omitted)).

As discussed above, even where a warrantless search is found to satisfy the special needs doctrine under the Fourth Amendment, the search still must comply with the constitutional requirement of an opportunity for the subject of the search to obtain precompliance review. Here, the Amended Complaint alleges that Mr. Goldston conducted the September of 2020 searches "without permission." (Dkt. No. 14 at 12.) Plaintiffs further allege that during the September 1, 2020 search, Mr. Goldston did not notify Plaintiffs of the inspection and he did not present his credentials. (*Id*. at 5; Dkt. No. 31 at 3.) Given these allegations, the undersigned cannot find the warrantless searches performed by Mr. Goldston complied with the requirements of the Fourth Amendment as a matter of law. Specifically, because Plaintiffs allege Defendant Goldston did not give them an opportunity to refuse the warrantless searches before entering the Premises, it is

unclear whether Mr. Goldston complied with the constitutional requirement of affording Plaintiffs an opportunity to obtain precompliance review. *See Patel*, 576 U.S. at 421 ("Absent an opportunity for precompliance review, the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits, or be used as a pretext to harass hotel operators and their guests"). The undersigned further cannot find that Defendant Goldston is entitled to qualified immunity because it has long been established that "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at 420; *see also DiMeglio v. Haines*, 45 F.3d 790, 795 (4th Cir.1995) ("In instances where there is a material dispute over what the defendant did, and under the plaintiff's version of the events the defendant would have, but under the defendant's version he would not have, violated clearly established law, it may be that the qualified immunity question cannot be resolved without discovery.").

Accordingly, Plaintiffs' § 1983 Fourth Amendment claim against Defendant Goldston should remain pending.

### D.     Violation of Fifth Amendment

Defendants next argue that Plaintiffs fail to allege sufficient facts to establish violations of their rights under the Fifth Amendment. The Amended Complaint alleges Dorchester County violated Plaintiffs' Fifth and Fourteenth Amendment rights by enacting Ordinance 07-21. (Dkt. No. 14 at 14.) The Amended Complaint further alleges that the individual Defendants violated Plaintiffs' Fifth and Fourteenth Amendment rights in that the "County's communications and demands from the Defendants, Dorchester County officials, constitute a public taking." (*Id.* at 12–14.)

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). This constitutional guarantee is "incorporated against the States by the Fourteenth Amendment." *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 827, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *see* U.S. Const. amend. XIV (guaranteeing no state may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"). Here, Plaintiffs have not alleged a total or per se taking of its land by the government, but rather a regulatory burden on their property that they contend rises to the level of a taking. (Dkt. No. 14.) The Supreme Court has recently reiterated the standard for analyzing a regulation that does not deprive an owner of all economic use of its property. *Murr v. Wisconsin*, —— U.S. ——, 137 S.Ct. 1933, 1943, 198 L.Ed.2d 497 (2017). "[W]hen a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking . . . may be found based on "a complex of factors," including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* (reciting factors set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)). "In deciding whether a particular governmental action has effected a taking, this Court focuses . . . both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole." *Penn Cent.*, 438 U.S. at 130–31,; *see Andrus v. Allard*, 444 U.S. 51, 65 (1979) ("[T]he denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety.").

In their Motion, Defendants cite certain cases concerning regulatory takings and extrapolate that "what *all* valid regulatory taking cases have in common is: 1) An owner held property of some value, 2) A governing body changed a regulation or statute, [and] 3) That regulatory change diminished the value of the owner's property." (Dkt. No. 23 at 13 (emphasis in original).) Defendants argue that because Plaintiffs cannot establish that Ordinance 07-21 changed during the time they have owned the Premises, their regulatory taking claim "cannot stand." (*Id.*) In response, Plaintiffs contend that they "are now deprived of full enjoyment and economically beneficial use of their private property as the County continues to demand restoration of unrecorded drainage ditch or face criminal prosecution plus $300K in fines." (Dkt. No. 31 at 6.) They contend "the County stormwater ordinance #07-21 constitutes a regulatory taking." (*Id.*) Plaintiffs further contend that they were "denied a significant portion of their Premises' economic beneficial use and/or enjoyment when the Defendants issued [a] Notice of Violation [letter] on September 1, 2020." (*Id.*)

Upon review, the undersigned does not find that the lack of change in Ordinance 07-21 during the relevant time period mandates the dismissal of Plaintiffs' § 1983 claims based on a regulatory taking. Rather, the alleged regulatory taking here should be considered in light of the *Penn Central* factors. *See Murr*, 137 S. Ct. at 1942 (citing the *Penn Central* factors as the "guildeline[] relevant . . . for determining when a government regulation is so onerous that it constitutes a taking" where the regulation does not negate all economic benefit). Because the parties have failed to address the *Penn Central* factors in their briefing, it would be premature to consider them here. Accordingly, the undersigned recommends that Plaintiff's § 1983 claims

based on a regulatory taking against Dorchester County, Goldston, Ward, and Frampton, should proceed and should be considered at the summary judgment stage.

Here, the undersigned recognizes Defendants' argument that Plaintiffs have failed to sufficiently plead any § 1983 claims against Defendants Ward, Carraher, and Frampton. (Dkt. No. 23 at 16–17.) However, the Amended Complaint alleges that the "County's communications and demands from the Defendants, Dorchester County officials, constitute a public taking." (Dkt. No. 14 at 13.) The Amended Complaint specifies that Goldston, Ward, and Frampton sent Plaintiffs letters confirming their violation of Ordinance 07-21 and the resulting consequences. (*Id*. at 5–8.) The Amended Complaint further alleges that "Plaintiffs are deprived of economically beneficial use of their property as the County continues to demand restoration of a 'Stormwater Retention/Detention Pond." (*Id*. at 13.) Such allegations, at this juncture, are sufficient to allege Goldston, Ward, and Frampton violated Plaintiffs' Fifth and Fourteenth Amendment rights through a regulatory taking.

However, the Amended Complaint does not specify any specific constitutional violation by Defendant Carraher. In their response brief, Plaintiffs assert that Mr. Carraher "is also fully responsible for the actions and/or wrongdoings of his direct reports." Because "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" Plaintiffs' Fourteenth Amendment claims against Mr. Carraher should be dismissed. *Ashcroft*, 556 U.S. at 676 (2009) (citations omitted).

### E.    Application of the South Carolina Tort Claims Act

Finally, Defendants argue that Plaintiffs fail comply with the South Carolina Tort Claims Act. (Dkt. No. 23 at 17–18.) More specifically, Defendants cite S.C. Code Ann. § 15-78-70 and

assert that "none of the Individual Defendants named in this action are appropriate parties; only Dorchester County is."[5] (Dkt. No. 23 at 17.) In their reply brief, Defendants acknowledge that "[i]nvoking the [SCTCA] demonstrates the infeasibility of the causes of action against the Individual Defendants in State Court." (Dkt. No. 32 at 9.)

This case is not in state court, and the Amended Complaint does not bring any claims pursuant to the SCTCA. Accordingly, the undersigned recommends that Defendants' argument here does not warrant the dismissal of any individual Defendants.[6]

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (Dkt. No. 23) be GRANTED IN PART AND DENIED IN PART. Specifically, the Court should dismiss Plaintiffs' claims against Dorchester County for violation of ex post facto law and for violation of the Fourth Amendment based on enacting Ordinance 07-21. The Court should also dismiss Plaintiffs' claims against Defendants Ward and Frampton for violation of the Fourth Amendment. The Court should dismiss Plaintiffs' claims against Defendant Carraher in their entirety, and Defendant Carraher should be dismissed as a party.

Accordingly, only the following claims should remain pending: (1) § 1983 claims against Dorchester County for failure to train under the Fourth Amendment and for regulatory taking under the Fifth and Fourteenth Amendments; (2) § 1983 claims against Defendant Goldston for unlawful

---

[5] The SCTCA specifies that "[i]n the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as a party defendant." S.C. Code Ann. § 15–78–70(c). The statute covers employee conduct insofar as it is not "outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15–78–60; see also S.C. Code § 15–78–70(b).

[6] Given that Plaintiffs bring claims under § 1983, immunity under the Eleventh Amendment would be more applicable to the individual Defendants. However, Defendants bear the burden of demonstrating sovereign immunity, and they have not yet raised this defense. *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014) (a defendant "bears the burden of demonstrating" sovereign immunity, because it is "akin to an affirmative defense").

searches under the Fourth Amendment and for regulatory taking under the Fifth and Fourteenth Amendments; and (3) § 1983 claims against Defendants Ward and Frampton for regulatory taking under the Fifth and Fourteenth Amendments. Additionally, the undersigned recommends Plaintiff Mr. Reyes only has standing to bring claims for violation of his Fourth Amendment rights.

**IT IS SO RECOMMENDED.**

June 25, 2021

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE