**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| CRISELDA REYES and EMMANUEL REYES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 2:21-cv-00520-DCN-MGB |
| DORCHESTER COUNTY OF SOUTH CAROLINA and MIKE GOLDSTON, JASON CARRAHER, JASON L. WARD, and JOHN FRAMPTON, *all in their individual and official capacities*, | ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 34, that the court grant in part and deny in part defendants' motion to dismiss, ECF No. 23. For the reasons set forth below, the court adopts the R&R and grants in part and denies in part the motion.

## I.  BACKGROUND

This case arises out of the alleged improper regulation of a single-family home lot located on Hillside Farms Subdivision in Dorchester County, South Carolina (the "Premises"). Plaintiff Criselda Reyes has been the continuous owner of the Premises since purchasing it in December 2019. In December 2019, she, along with plaintiff Emmanuel Reyes (together, the "Reyeses"), examined all closing escrow documents—including all recorded easements—with their closing attorney. According to the amended complaint, there were only two recorded drainage easements on the Premises, and the Premises' backyard stormwater ditch was not recorded or deeded for public use.

1

The Reyeses have utilized the Premises as their primary residence since March 2020. In March 2020, the Reyeses started experiencing overflowing stormwaters coming from the Premises' stormwater ditch: a 130-foot-long ditch in the Premises' backyard that accumulated stagnant stormwater and allegedly posed health risks to the Reyeses' family. The ditch was intended to allow stormwater to flow into a county-approved "precast concrete drop inlet box connected to reinforced 32-ft long concrete drainage [] pipes" and release into the wetlands. ECF No. 14, Amend. Compl. ¶ 12. The Reyeses identified a blockage to the pipe system as the source of the overflow. Specifically, in July 2020, contractors discovered that the root cause of the improper drainage was a "tennis ball-size[d] hole" on the bottom of the precast concrete box that was buried under two feet of mud. Id. ¶ 17 (cleaned up).

The Reyeses took several responsive actions, both prior to and after discovery of the blockage. In May 2020, the Reyeses activated a Federal Emergency Management Agency ("FEMA") flood insurance policy, and in June 2020, they installed artificial grass in the Premises' backyard as a deterrent to retained stormwater from the ditch. Most notably, in August 2020, they hired contractors who recommended connecting the two recorded drainage easements with stormwater drainage pipes to solve the stormwater intrusions. The contractors subsequently completed the maintenance.

On September 1, 2020, the Reyeses witnessed and video recorded two unidentified individuals—one of whom was later identified in the amended complaint as defendant Mike Goldston ("Goldston")—entering the back of the Premises through the neighboring properties. The two individuals proceeded to conduct an allegedly "unlawful search and surveillance of the Premises." Id. ¶ 19. In a letter dated September 1, 2020,

Goldson, a Dorchester County Public Works Engineer, sent the Reyeses a "Notice of Violation" ("NOV") wherein he wrote that based on an inspection on September 1, 2020, the Reyeses were in "direct violation of the Dorchester County Stormwater Management Program Ordinance #07-21" ("Ordinance 07-21") for filling in the stormwater pond. According to the amended complaint, Ordinance 07-21 states, in relevant part: "No person shall create a blockage of an open channel or pipe system used to convey or transport stormwater runoff from one property to another separately owned property." Amend. Compl. ¶ 13 (quoting Ordinance 07-21 § 3.2(c)) (emphasis in original). The NOV went on to state that fines up to $1,000 per day may be assessed for failure to restore the pond to its original condition. ECF No. 14-1 at 5. Goldson sent a second letter on September 9, 2020 indicating that after another inspection conducted on September 8, 2020, the stormwater pond had not been restored and the Reyeses were fined $1,000. Id. at 6.

In September 2020, the Reyeses appealed the NOV to defendants John Frampton ("Frampton") and Jason L. Ward ("Ward"). Frampton is the County Attorney for Ordinance Enforcement, and Ward is a County Administrator. On September 30, 2020, Ward responded that the Reyeses' appeal of the NOV had been reviewed and denied. Id. at 7. Following the denial, the Reyeses made several Freedom of Information Act ("FOIA") requests for the "Stormwater Management Plan" and other documents related to the Premises. Amend. Compl. ¶ 23. Defendant Dorchester County responded that the documents were unavailable.

In October 2020, the Reyeses invited Goldston and Frampton to the Premises to identify a "common-sense" solution. Id. ¶ 24. Goldston and Frampton accepted the

invitation but at the meeting, allegedly emphasized that they would pursue criminal charges unless the stormwater detention pond was fully restored.  On November 12, 2020, Goldston sent the Reyeses a fourth letter indicating that they had failed to appeal the denial and Dorchester County would resume assessing $1,000 per day in fines; however, it would be willing to forgive the civil penalties if the Reyeses completely restored the stormwater management facility within thirty days.  ECF No. 14-1 at 9.  On December 22, 2020, Frampton sent a letter to the Reyeses' attorney wherein he dismissed the fact that no easement existed over the stormwater management facility and stated that the civil penalties would continue to accrue.  Id. at 11.  In January 2021, the Reyeses made another FOIA request for all documents related to the "taking" for "public use" of the "stormwater pond" within the Premises.  Amend. Compl. ¶ 27.  Frampton allegedly responded that since there had been "no condemnation" and "no taking," no such documents existed.  Id.  On March 9, 2021, the South Carolina Department of Health and Environmental Control ("DHEC") sent its own NOV to the Reyeses, copying Goldman, explaining that Dorchester County officials had informed DHEC of violations to DHEC's regulations concerning proper maintenance of stormwater management.  ECF No. 14-1 at 2.  The letter stated that the Reyeses had fifteen days to respond with how they planned to address the restoration of the detention pond or risk an enforcement action.

On February 19, 2021, the Reyeses, proceeding pro se, filed the instant action against defendants.  Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Baker.  On April 2, 2021, the Reyeses filed a document styled as a "proposed amended complaint."  ECF No. 11.  On the same day, the magistrate judge entered an

order directing the Reyeses to the rules on amended complaints, ECF No. 12, and on April 12, 2021, the Reyeses filed their amended complaint, now the operative complaint, Amend. Compl.  The amended complaint alleges violations of the Reyeses' Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 and seeks injunctive relief. Id.

On May 7, 2021, defendants filed their motion to dismiss.  ECF No. 23.  The Reyeses responded in opposition on June 11, 2021, ECF No. 31, and defendants replied on June 18, 2021, ECF No. 32.  On June 24, 2021, the Reyeses, without leave of the court, filed a sur-reply.  ECF No. 33.  On June 25, 2021, Magistrate Judge Baker issued the R&R, recommending that the court grant in part and deny in part the motion to dismiss.  ECF No. 34.  On July 9, 2021, defendants filed their objections to the R&R, ECF No. 40.  The Reyeses did not respond to defendants' objections, and the time to do so has now expired.  On July 22, 2021, the Reyeses filed their objections to the R&R, ECF No. 46.  Defendants responded to the objections on August 5, 2021, ECF No. 47, and the Reyeses replied on August 16, 2021, ECF No. 51.  As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423

U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the

plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Plaintiffs are proceeding pro se in this case.  Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys.  See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970, 99 (1978).  A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980).  Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.   DISCUSSION

The magistrate judge recommended that the court dismiss Emmanuel Reyes as a party with respect to his claims based on the Fifth and Fourteenth Amendment.  The

magistrate judge further recommended that only the following sets of claims remain pending: (1) the § 1983 claims against Dorchester County for failure to train under the Fourth Amendment and for regulatory taking under the Fifth and Fourteenth Amendments; (2) the § 1983 claims against Goldston for unlawful searches under the Fourth Amendment and for regulatory taking under the Fifth and Fourteenth Amendments; and (3) the § 1983 claims against Ward and Frampton for regulatory taking under the Fifth and Fourteenth Amendments.  ECF No. 34 at 27–28.  Both parties object to the recommendations set forth in the R&R.  Notably, neither party objects to the R&R's recommendation on Emmanuel Reyes's standing.  The court first briefly considers the issue of standing, then addresses the Reyeses' objections, and finally addresses defendants' objections.

### A.  Standing

Defendants requested that the court dismiss Emmanuel Reyes as a plaintiff in this action due to a lack of standing.  According to defendants, the complaint plainly alleges that Criselda Reyes is the sole owner of the Premises, and it is clear from the law and the face of the complaint that Emmanuel Reyes did not and could not claim the Premises as marital property.  As such, defendants argued that Emmanuel Reyes lacks standing to bring claims related to the Premises.  The Reyeses responded that both plaintiffs' names were on the utility bills, but they did not deny that Emmanuel Reyes had no ownership interest in the Premises.  The magistrate judge agreed with defendants and recommended that the court find that Emmanuel Reyes lacks standing to assert any claims based on violations of his Fifth and Fourteenth Amendment rights.  However, the magistrate judge found that "it would be premature to dismiss Mr. Reyes' claims for violation of his rights

under the Fourth Amendment." ECF No. 34 at 12. The magistrate judge reasoned that under the Fourth Amendment, "a person need not always have a recognized common-law property interest in the place to be searched to claim a reasonable expectation of privacy in it." Id. at 11 (quoting Byrd v. United States, 138 S. Ct. 1518, 1526 (2018)).

Neither the Reyeses nor defendants object to the magistrate judge's findings on standing. Accordingly, the court "must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (internal quotations and citation omitted). After reviewing the record in this case, the applicable law, and the R&R, the court finds no clear error in the R&R's findings that Emmanuel Reyes lacks standing to bring claims under the Fifth and Fourteenth Amendment but may assert a violation of his Fourth Amendment right. Emmanuel Reyes's substantive due process claims require a "cognizable property interest, rooted in state law," L.M. Everhart Constr., Inc. v. Jefferson Cnty. Planning Comm'n, 2 F.3d 48, 51 (4th Cir. 1993), but his Fourth Amendment claim does not, see Byrd, 138 S. Ct. at 1526. The court therefore adopts the R&R's findings on standing in full.

## B. The Reyeses' Objections

Next, the court considers the Reyeses' objections to the R&R, which raise two categories of objections. First, they assert various "corrections" to the R&R's recitation of facts. ECF No. 46 at 1–4. In doing so, the Reyeses merely provide a list of ten factual corrections, but because they fail to "direct the court to a specific error in the magistrate's proposed findings and recommendations," the court need only review the R&R's factual rendition for clear error. Orpiano, 687 F.2d at 47. The court has reviewed the corrections against the R&R's analysis of the facts and finds that these corrections are all either new

assertions of fact, are immaterial to the magistrate judge's review, or both.  As just one example, the Reyeses assert that there was no recorded or deeded legally-binding easement document filed by the developer or the builder for Dorchester County's land use of the Premises.  ECF No. 46 at 4 ¶ 8.  Even if this factual allegation had been in the Amended Complaint and were true, the R&R already acknowledged that there was no easement recorded for the retention pond.  ECF No. 34 at 5.  The fact that there was no documented easement was not material to the R&R's analysis of the relevant doctrines under the Fourth, Fifth, and Fourteenth Amendments.  The Reyeses also raise other allegations that are clearly being asserted for the first time in their objections.  For example, they assert that Dorchester County officials engaged in possible "quid pro quo" arrangements with the builder, Palmetto Signature Homes.  ECF No. 46 at 3–4.  The court finds that such factual assertions were not in the amended complaint, and the Reyeses are beyond the point of requesting leave to amend the complaint to add new factual allegations.  As such, it would be improper to consider those facts at this juncture.  See Thomas v. Comm'rs of Charles Cnty., 2001 WL 76418, at *2 (D. Md. Jan. 17, 2001) (citing Parham v. Pepsico, Inc., 927 F. Supp. 177, 178 (E D.N.C. 1995), aff'd, 86 F.3d 1151 (4th Cir.1996)) ("When ruling on a motion to dismiss, a court is to consider those facts contained in the complaint, only.").[1]  Therefore, the court finds that the Reyeses' corrections do not present any grounds for declining to adopt the R&R's recommendation.

---

[1] For the same reason, the court will not consider the "additional supporting evidence" provided by the Reyeses in their reply in support of their objections to the R&R.  See ECF 51 at 2–3.

10

Next, the court considers the Reyeses' remaining objections related to their takings clause claim. Count IV of the amended complaint alleges that Ordinance 07-21 is a regulation that effectively takes the Reyeses' private property for public use, without just compensation, in violation of the Fifth Amendment's takings clause. Amend. Compl. ¶ 48(d). The amended complaint further alleges that the Dorchester County officials' communications and demands related to Ordinance 07-21 also constitute a taking. Id. ¶ 48(e). The Reyeses raise a series of objections arguing, in sum, that the R&R failed to consider prior United States Supreme Court precedent on takings clause cases. It is not apparent from the Reyeses' argument which of the R&R's findings they are objecting to. After all, the R&R recommended allowing the Reyeses' "§ 1983 claims based on a regulatory taking against Dorchester County, Goldston, Ward, and Frampton . . . to proceed." ECF No. 34 at 25–26. The R&R reached this finding after observing that the parties had failed to address the factors articulated in Penn Central Transportation Co. v. City of New York, 438 U.S. 104 (1978), which set forth the standard for analyzing a regulation that burdens an owner's property but does not deprive an owner of all economic use of its property. See Murr v. Wisconsin, 137 S. Ct. 1933, 1942–43 (2017). Accordingly, the R&R found that it would be premature to dismiss the regulatory taking claims against all defendants except for defendant Jason Carraher ("Carraher").[2] In their

_____

[2] The R&R singled out Carraher because although the amended complaint plausibly alleged that the county officials' communications and demands constituted a taking, there were no factual allegations in the amended complaint about any of Carraher's communications or demands, and a government official may not be liable for the unconstitutional conduct of his subordinates under a theory of respondeat superior. The Reyeses do not object to this finding, and the court finds no clear error in the same. See also Harbeck v. Smith, 814 F. Supp. 2d 608, 626 (E.D. Va. 2011) (citing Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004)) ("[The] doctrine of respondeat superior has no applicability to § 1983 claims.").

objections, the Reyeses argue that the R&R failed to consider two Supreme Court cases, including Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992), which held that "when the regulation altogether destroys the property's economic value, the Penn Central standard does not apply." ECF No. 46 at 5–6 (also citing Knick v. Township of Scott, 139 S. Ct. 2162 (2019)). Although it is unclear, for the Reyeses' benefit, the court construes their arguments as an objection to the R&R's decision to only consider Ordinance 07-21 as a partial taking, rather than a full or categorical taking.

Upon review, the court finds that the R&R did not err in considering Ordinance 07-21 as a partial taking. Prior to the expansion of the Supreme Court's jurisprudence on the takings clause, "'it was generally thought that the Takings Clause reached only a direct appropriation of property, or the functional equivalent of a practical ouster of the owner's possession,' like the permanent flooding of property." Murr, 137 S. Ct. at 1942 (quoting Lucas, 505 U.S. at 1014). The Supreme Court later expanded its regulatory takings jurisprudence, declaring that "if regulation goes too far," it "can be so burdensome as to become a taking." Id. (quoting Pa. Coal Co. v. Mahon, 260 U.S. 393, 415 (2002)). The Reyeses are correct that an owner may assert a violation of the Takings Clause if a regulation constitutes a categorical taking such that it "denies all economically beneficial or productive use of land." Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). However, "[t]he Lucas rule is only applicable in 'the extraordinary circumstance when no productive or economically beneficial use of land is permitted.'" Woodale P'ship v. City of Charleston, 2010 WL 11661386, at *19 (D.S.C. Sept. 17, 2010) (quoting Lucas, 505 U.S. at 1017) (emphasis in original). Here, the complaint alleges no facts that plausibly support a claim of a categorical taking of the Reyeses' property by the

12

government.  Instead, even in the light most favorable to the Reyeses, the complaint is most fairly read as asserting that Ordinance 07-21 affected the stormwater ditch and surrounding areas but did not deprive the Premises of all economic value or economically beneficial uses.  "[A] case in which the Government has taken one part of a larger tract, leaving the remainder to the landowner," is a partial taking.  United States v. Banisadr Bldg. Joint Venture, 65 F.3d 374, 378 (4th Cir. 1995).  Therefore, the court agrees with the R&R's decision to read the complaint as alleging a partial taking and overrules the Reyeses' objections.  In its analysis of defendants' objections, the court addresses the R&R's recommendation to deny the motion to dismiss the partial taking claim in the absence of any discussion on the Penn Central factors, ultimately overruling defendants' objections as well.

### C. Defendants' Objections

Defendants requested that the court dismiss the Reyeses' complaint in its entirety for failure to state claim upon which relief may be granted pursuant to Rule 12(b)(6). Defendants brought their motion on five grounds: (1) the Reyeses cannot establish that defendants enacted an ex post facto law in violation of the Fifth and Fourteenth Amendment; (2) the Reyeses failed to allege sufficient facts to support a cause of action for a violation of the Fourth Amendment; (3) the Reyeses failed to allege sufficient facts to support a cause of action for a violation of the Fifth Amendment; (4) the Reyeses failed to allege sufficient facts to support a cause of action against Ward, Frampton, and Carraher;[3] and (5) the Reyeses failed to comply with the South Carolina Tort Claims Act.

---

[3] Defendants' motion to dismiss argued that the individual defendants are entitled to qualified immunity on all claims as a separate basis for dismissal, but the court follows

The R&R considered each argument, ultimately recommending that the following claims survive defendants' motion to dismiss: (1) the claim against Dorchester County for failure to train under the Fourth Amendment; (2) the claim against Goldston for an unlawful search under the Fourth Amendment; (3) the claim against Dorchester County for a regulatory taking under the Fifth Amendment; and (4) the claim against Goldston, Ward, and Frampton for a regulatory taking under the Fifth Amendment. Defendants do not object to the R&R's recommendation concerning the alleged violation of ex post facto law but object at least in part to each of the R&R's recommendations concerning the other grounds for dismissal. The court considers each basis stated in the motion to dismiss in turn, and after reaching the same conclusions as the R&R, adopts the recommendation as to the claims permitted to proceed.

### 1.  Ex Post Facto Law

Count IV of the amended complaint alleges that Ordinance 07-21 is unconstitutional because it "seeks to create a retroactive penal regulation regarding private property in violation of [the] prohibition against 'Ex Post Facto Laws.'"  Amend. Compl. ¶ 48(b).  The magistrate judge observed that according to public records, Ordinance 07-21 was enacted on August 20, 2007—more than a decade before Criselda Reyes purchased the Premises in December 2019.  Accordingly, the R&R recommended that the complaint's claim for a violation of the prohibition against ex post facto laws be dismissed.  Neither party objects to the R&R's recommendation.  The court does not find that it was clear error for the R&R to take judicial notice of information contained in

---

the R&R in considering the argument under this argument, related to the Fourth Amendment claims against the individual defendants.

Ordinance 07-21.[4]  "[C]ourts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint."  Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (internal quotation marks and citation omitted).  The court thus adopts the R&R's corresponding analysis and dismisses the claim.

### 2.  Fourth Amendment Claims

Count I of the amended complaint alleges that Dorchester County violated the Reyeses' Fourth Amendment rights under 42 U.S.C. § 1983 because it maintained a policy, practice, custom, or procedure that allowed its officers to conduct warrantless entries onto the private property of Dorchester County citizens.  Count II alleges that Dorchester County violated the Reyeses' Fourth Amendment rights under 42 U.S.C. § 1983 due to a failure to train its officials.  Count III alleges that Goldston, Carraher, Ward, and Frampton, in their official and individual capacities, violated the Reyeses' Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983.  Defendants moved to dismiss each of the claims.  In doing so, they argued: 1) defendants had a right of access under a restrictive covenant, and 2) the entry onto the Premises constituted a reasonable administrative search under the special needs doctrine.  The magistrate judge separately analyzed the claims against Dorchester County and the individual defendants, and the court does the same, ultimately finding that the Reyeses have failed to assert a § 1983

---

[4] While "[t]he fact that a document may or may not be available online . . . is not determinative of whether it is a public record," Guthrie v. McClaskey, 2012 WL 5494457, at *3 (W.D. Va. Nov. 13, 2012), the court notes for reference that Ordinance 07-21 is accessible at:
https://www.dorchestercountysc.gov/home/showpublisheddocument/1262/636449588505030000.

violation against Dorchester County for maintaining an unconstitutional policy, but they have properly alleged a violation of the Fourth Amendment against Dorchester County for failure to train and a violation of the Fourth Amendment against Frampton.

### a. Dorchester County

The R&R determined that Ordinance 07-21 is the only possible unconstitutional policy, practice, or custom that the complaint could be referring to, and it determined that "the searches performed pursuant to Ordinance 07-21 constitute administrative searches in compliance with the special needs doctrine." ECF No. 34 at 18. With few exceptions, searches of private property conducted outside the judicial process, without prior approval of a judge or a magistrate judge, are per se unreasonable. Arizona v. Gant, 556 U.S. 332, 338 (2009). One of those exceptions is the special needs doctrine, which "allows warrantless searches 'where a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement' and 'when balancing the individual's privacy expectations against the government's interests leads to the determination that it is impractical to require a warrant or some level of individualized suspicion in the particular context.'" United States v. Davis, 690 F.3d 226, 248 (4th Cir. 2012) (quoting United States v. Rendon, 607 F.3d 982, 989 (4th Cir. 2010)) (emphasis in original). However, "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." City of Los Angeles v. Patel, 576 U.S. 409, 420 (2015).

Under the Stormwater Management and Sediment Reduction Act (the "Act"), DHEC delegated stormwater management and sediment control to Dorchester County,

including the "right of entry for the purpose of determining if a land disturbing activity is

being conducted . . . , conducting inspections and taking enforcement actions." S.C.

Code Ann. § 48-14-95. Under this authority, Dorchester County promulgated Ordinance

07-21. Section 5.2 of Ordinance 07-21 permits officials to "enter and inspect all

properties to effectuate the provisions of the ordinance. The official must typically notify

the owner of the inspection and conduct it at reasonable times, but in the event that the

official reasonably believes that discharges from the property may cause an imminent and

substantial threat to human health or the environment, the inspection may take place at

any time upon an initial attempt to notify the owner of the property. It is uncontroverted

that Ordinance 07-21 does not provide a process for a search to be conducted within the

judicial process. However, the R&R found that the ordinance provides the subject of the

search an opportunity to obtain precompliance review via section 5.2's notice provision.

The R&R further determined that the primary purpose of Ordinance 07-21 went beyond

the need for law enforcement. The R&R lastly noted that the Reyeses' argument—that

Goldston did not comply with the terms of Ordinance 07-21 § 5.2 because he did not

notify them of the searches before they took place—was not an argument that the

ordinance itself was unconstitutional. Neither party objects[5] to the R&R's conclusion

that Ordinance 07-21 authorizes administrative searches that are constitutionally

reasonable under the special needs doctrine. The court, finding no clear error, adopts the

---

[5] As discussed earlier, the Reyeses included several factual corrections in their objections, at least one of which stated that there was no restrictive covenant on the Premises. Even if the court favorably construes these as objections to the R&R's recommendation regarding the Reyeses' Fourth Amendment claim against Dorchester County, the court reiterates that the corrections are immaterial, as the R&R did not place any weight in defendants' argument that the entry was authorized by the Declaration of Restrictive Covenants, which the court also discusses infra.

R&R's analysis and dismisses the Reyeses' claim that Dorchester County maintained an unconstitutional policy as it relates to Ordinance 07-21.

The R&R next recommended the court find that the § 1983 claim against Dorchester County for failure to train, in violation of the Fourth Amendment, should proceed. Specifically, the R&R concluded that the complaint sufficiently alleges that Dorchester County failed to train its ordinance officials on making reasonable searches under Ordinance 07-21, and since the complaint also alleges that at least one official, Goldston, deviated from Ordinance 07-21, the complaint sufficiently establishes liability based on a failure to train. Defendants object, arguing that the complaint fails to allege, as it must, that Dorchester County engaged in a custom, policy, or practice of failing to train.

Municipalities and other local government units may be held liable under § 1983. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978). But "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691 (emphasis in original); see Connick v. Thompson, 563 U.S. 51, 60 (2011) (holding that local governments "are not vicariously liable under § 1983 for their employees' actions"). Thus, a plaintiff who seeks to assert a § 1983 claim against a municipality or county is obliged to "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 694). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its

inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989).

As a result, claims against a municipality for failure to train are difficult to bring. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410. Not only must the plaintiff "identify conduct properly attributable to the municipality," but the plaintiff must also "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404 (emphasis in original). The standard of fault is so stringent because any less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities." Canton, 489 U.S. at 392.

For a failure to train to rise to the level of deliberate indifference, a plaintiff must show either (1) a pattern of unconstitutional conduct by inadequately trained employees, or (2) a single violation of a federal right that is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Hill v. Robeson Cnty., 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010) (quoting Brown, 520 U.S. at 407–09). A pattern of "similar constitutional violations by . . . employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," Connick, 563 U.S. at 62 (quoting Brown, 520 U.S. at 409), and "[o]nly in the rarest of circumstances" may municipal liability be based on a single violation of a federal right, Chennault v. Mitchell, 923 F. Supp. 2d 765, 787 (E.D. Va. 2013). To show deliberate indifference in the latter way, a plaintiff must show at least "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its

19

employees to handle recurring situations presenting an obvious potential for such a violation." Brown, 520 U.S. at 409. Under this standard, the single violation must reflect the municipality's "deliberate indifference to the 'highly predictable consequence.'" Connick, 563 U.S. at 64 (quoting Brown, 520 U.S. at 398).

Defendants raises two specific objections under the R&R's findings on the Reyeses' failure to train claim. First, defendants argue that because the R&R determined that Ordinance 07-21 falls under the special needs doctrine, then Dorchester County could not have subscribed to a custom, policy, or practice that subjected it to any Monell liability under § 1983. The court disagrees. Defendants conflate the custom, policy, or practice at issue in each respective claim. The R&R recommended—and the court found above—that Ordinance 07-21 was not a policy that sanctioned an unconstitutional search. However, that does not mean that Dorchester County could not have had a separate custom or practice of failing to train its officials. Accordingly, the court overrules this objection.

Second, defendants argue in the alternative that the amended complaint fails to sufficiently allege that Dorchester County had a policy, custom, or practice of failing to train its employees. They argue that instead, the complaint alleges sporadic or isolated incidents, and at most, the complaint identifies two dates on which an unlawful inspection of the detention basin occurred: September 1, 2020 and September 8, 2020. The court agrees with defendants that even in the light most favorable to the Reyeses, the complaint fails to allege a pattern of unconstitutional conduct by untrained or inadequately trained employees. In the absence of such an allegation, the amended complaint must allege "that a municipality has failed to train its employees to handle

20

recurring situations presenting an obvious potential for such a violation." Brown, 520

U.S. at 409. The court finds that at this stage of the proceedings, the Reyeses have

alleged sufficient facts to support the claim that Goldston's actions in violation of

Ordinance 07-21 present a recurring situation with an obvious potential for future

violations, and Dorchester County failed to train its employees to account for those

scenarios. Other courts have similarly denied motions to dismiss § 1983 municipal

liability claims for failure to train with similar reasoning. See, e.g., Moody v. City of

Newport News, 93 F. Supp. 3d 516, 538–39 (E.D. Va. 2015) (observing that the

plaintiff's allegations concerning a pattern of constitutional violations were "conclusory,

at best" but finding that the complaint "contain[ed] sufficient allegations to plausibly

establish the element of deliberate indifference" based on the city's failure to train its

officers "concerning an obvious constitutional duty the officers [we]re certain to face").

While defendants may be able to show, with the benefit of discovery, that Goldston's

alleged conduct was not highly predictable and/or due to deliberately indifferent or

deficient training, such a determination would be premature at this stage. Therefore, the

court overrules defendants' objections in this respect, grants the motion to dismiss Count

I, and denies defendants' motion to dismiss Count II.

### b. Individual Defendants

Under Count III, the amended complaint alleges that Goldston entered the

Premises with an unnamed colleague on September 1 and September 8, 2020, without an

administrative warrant, consent, or legal justification. Amend. Compl. ¶ 41. The

amended complaint further alleges that Carraher, Ward, and Frampton were "in full

support" of Goldston's actions. Id. ¶ 44. The complaint alleges that, as a result, the

individual defendants violated the Reyeses' Fourth and Fourteenth Amendment rights. The R&R recommended that the court find that the complaint fails to sufficiently allege any violation committed by Ward, Carraher, and Frampton. Neither party objects to the R&R's recommendation in this respect, and the court finds no clear error. Therefore, the court adopts the R&R's recommendation regarding the Fourth Amendment claims against Ward, Carraher, and Frampton, and dismisses those claims.

However, the R&R recommended that the § 1983 claim against Goldston be permitted to proceed.[6] Defendants object, arguing that although the R&R summarized their argument regarding the Declaration of Restrictive Covenants, the R&R did not address or consider the argument. The court finds that the R&R ultimately did not err in reaching its conclusion, and in any case, the court rejects defendants' argument. Specifically, defendants argued in their motion to dismiss that on November 9, 2004, the first developer of the Premises filed with the Dorchester County Register of Deeds a Declaration of Restrictive Covenants ("DRC") that runs with the land. According to defendants, the covenant authorized employees like Goldston to enter the lands of the declarants—which includes subsequent landowners like the Reyeses—and inspect the property to verify compliance with the restrictive covenant.

As a preliminary matter, defendants request that the court take judicial notice of the DRC because it is a public record. Even if the court accepts that the DRC is a public record, the court must view it in the light most favorable to the Reyeses. Under the DRC,

---

[6] The R&R also determined that Goldston is not entitled to qualified immunity because he failed to afford the Reyeses an opportunity to obtain precompliance review by providing notice under section 5.2, and, in doing so, he violated clearly established law. Defendants do not object or otherwise raise qualified immunity in their objections, and the court adopts the R&R's analysis on qualified immunity.

the restrictive covenant is to "run with the land and be binding on all heirs, successors, assigns . . . , lessees, or other occupiers." ECF No. 23-2 at 1. But the DRC also provides that the perimeter of the property "shall at all times be plainly marked by permanent signs saying, 'Protected Natural Area,' or by an equivalent, permanent marking system." Id. ¶ 8. It further provides that a "plat depicting the boundaries of the Property subject to these restrictive covenants shall be recorded in the deed records office." Id. ¶ 9. Nothing in the complaint suggests that the backyard ditch was marked as a protected area or that a plat depicting Lot #10, the Premises, was ever recorded. While the complaint fails to specifically allege that the Premises were not affected by a restrictive covenant,[7] it alleges that the Reyeses had "100% usage and full enjoyment" of the Premises. Amend. Compl. ¶ 9. The court finds that defendants have not established to a legal certainty the existence of a restrictive covenant permitting Goldston to enter onto the Premises. Stated another way, it is not the case that the Reyeses can prove no set of facts that would support their claim against Goldston. In sum, the court grants the motion to dismiss the Fourth Amendment claims against Carraher, Ward, and Frampton, and denies the motion to dismiss the same claim against Goldston.

### 3. Fifth Amendment Claims

As the court previously discussed in its analysis of the Reyeses' objections, Count IV of the amended complaint alleges that Dorchester County violated the Reyeses' Fifth

---

[7] The Reyeses state, as one of their factual corrections in their objections, that the Dorchester County Growth Management Department declared that the Premises were not restricted by any recorded covenant that prohibited the Reyeses' maintenance. ECF No. 46 at 4 ¶ 6 (citing ECF No. 31-1 at 5). Th exhibit cited appears to be an application, and it does not appear to be a public record such that the court may consider. In any event, neither the factual correction nor the exhibit impacts the court's analysis.

and Fourteenth Amendment rights because the provisions and enforcement of Ordinance 07-21 serve to take their property for use without just compensation. The R&R recommended that the court deny the motion to dismiss and permit the claim to proceed against Dorchester County, Goldston, Ward, and Frampton.

Defendants' first set of objections to the R&R's recommendation under this claim is that the R&R erred by inferring a Fifth Amendment takings clause action against the individual defendants—Goldston, Ward, and Frampton. Defendants argue that Count IV only alleges a "claim against defendant Dorchester County." See Amend. Compl. at 13. Under that cause of action, the amended complaint alleges that the "County's communications and demands from the . . . Dorchester County officials constitute a public 'Taking,'" Id. ¶ 48(e), but defendants insist that only Dorchester County is the subject of the allegation. Along the same lines, defendants further argue that individuals cannot effectuate a regulatory taking. Finally, defendants argue that the notice of a violation of a county ordinance cannot constitute a regulatory taking.

Defendants are partially correct. "[M]onetary relief is unavailable against persons sued in their individual capacities for a taking." Marina Point Dev. Assocs. v. Cnty. of San Bernandino, 2020 WL 2375221, at *3 (C.D. Cal. Feb. 19, 2020) (citing Langdon v. Swain, 29 F. App'x 171, 172 (4th Cir. 2002)). "The very nature of a taking is that a public entity is taking private property for a public purpose, and must provide just compensation in return." Bridge Aina Le'a, LLC v. State of Haw. Land Use Comm'n, 125 F. Supp. 3d 1051, 1078 (D. Haw. 2015). "This concept is antithetical to 'the notion that someone acting in an individual capacity has taken property or could be personally liable for a taking.'" Marina Point, 2020 WL 2375221, at *3 (quoting Bridge Aina Le'a,

125 F. Supp. 3d at 1078). To the extent the R&R recommends allowing Fifth Amendment claims against Goldston, Ward, and Frampton in their individual capacities to proceed, the court rejects such a recommendation. However, the court interprets the R&R as stating that those individual defendants may be sued in their official capacities, and under a de novo review, the court finds the same. Although the title of Count IV does not specify that the cause of action pertains to the individual defendants, the Reyeses' pro se complaint may be liberally construed as asserting such a claim when it alleges that the county's communications and demands from its officials constituted a taking. Furthermore, "[s]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent." Lamar Advert. of Mobile, Inc. v. City of Lakeland, 980 F. Supp. 1455, 1459 (M.D. Fla. 1997). "Official capacity suits merely represent 'another way of pleading an action against an entity of which an officer is an agent.'" Id. (quoting Kentucky v. Graham, 473 U.S. 159, 167 (1985)). Finally, defendants fail to cite any authority for their argument that notice and demands may not be considered within the Reyeses' regulatory taking claim. Rather, "[i]n urging courts to consider the 'character of the government action,' the Supreme Court in Penn Central recognized government action may impact property in myriad ways and what is important is the nature or substance of the government's action, as opposed to the precise form it may take." Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1307 (Fed. Cir. 2015) (citing Penn Central, 438 U.S. at 124). For purposes of the motion to dismiss, the court finds that claims related to how the officials acted to enforce Ordinance 07-21 are plausibly read as part of the Reyeses' regulatory taking claim. Therefore, the court will

permit the Reyeses' § 1983 claim based on a regulatory taking against Goldston, Ward, and Frampton in their official capacities to proceed.

Next, defendants argue that the parties' collective failure to address the <u>Penn Central</u> factors should reflect a failure to plead on the part of the Reyeses, and such a failure should lead to dismissal, rather than survival, of the claims. In support, defendants cite several cases that purportedly dismissed regulatory taking claims for failure to plead facts supporting the <u>Penn Central</u> factors. Although the Reyeses failed to discuss the <u>Penn Central</u> factors in their response to the motion to dismiss and in their objections to the R&R, the relevant inquiry is whether the amended complaint itself alleges facts sufficient to support a <u>prima facie</u> case. Defendants proceed to argue that plaintiffs have failed to meet each of the <u>Penn Central</u> factors, and they may raise the issue in their objections because the magistrate judge raised the factors for the first time in the R&R. The court hesitates to allow such an argument because, as defendants admit, such arguments are typically deemed waived if not raised in the original briefing. Even acknowledging defendants' arguments under each of the factors, however, the court finds that the amended complaint has sufficiently alleged facts supporting the <u>Penn Central</u> factors.[8]

As stated earlier, courts apply the regulatory takings test under <u>Penn Central</u> "when a regulation such as a zoning ordinance causes substantial economic harm but does not deprive the landowner's property of all economic value." <u>Adams v. Village of</u>

---

[8] Furthermore, while the court acknowledges defendants' arguments under the <u>Penn Central</u> factors, it must balance that against the court's charge to liberally construe a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. <u>Hughes</u>, 449 U.S. at 9.

Wesley Chapel, 259 F. App'x 545, 549 (4th Cir. 2007). Under Penn Central, the court

must balance "'a complex of factors,' including (1) the economic impact of the regulation

on the claimant; (2) the extent to which the regulation has interfered with distinct

investment-backed expectations; and (3) the character of the governmental action."

Murr, 137 S. Ct. at 1237 (quoting Palazzo, 553 U.S. at 617). "The first two factors—

economic effects and investment-backed expectations—are 'primary among those

factors.'" Clayton Farm Enters., LLC v. Talbot Cnty., 987 F.3d 346, 353 (4th Cir. 2021)

(quoting Lingle v. Chevron, U.S.A., Inc., 544 U.S. 528, 538–39 (2005)). The court

briefly addresses each of the factors in turn.

### a. Economic Impact

Under this factor, defendants argue that the amended complaint fails to discuss

the economic impact of the alleged taking except to the extent civil fines may be

considered an economic impact. Defendants further argue that in the only case they

could identify where civil fines were considered an economic impact, those fines

occurred in tandem with a direct appropriation. ECF No. 40 at 8 (citing Horne v. Dep't

of Agric., 135 S. Ct. 2419 (2015)). The court agrees that the issue of economic impact

"is not wholly reducible to the imposition of fines." Leon v. Hayward Bldg. Dep't, 2017

WL 3232486, at *6 (N.D. Cal. July 31, 2017) (citation omitted). However, at least one

other court has considered civil fines as part of the economic impact consideration. See

Bens BBQ, Inc. v. Cnty. of Suffolk, 2020 WL 5900037, at *9 (E.D.N.Y. May 7, 2020)

(finding that the first Penn Central factor slightly weighed in the plaintiff's favor where

the plaintiff alleged that owners of alarm systems were forced to pay severe fines under

the county's false alarm law but ultimately concluding that the second and third factors

were not met).  Moreover, the amended complaint also alleges that in the absence of the maintenance that was prohibited by Ordinance 07-21, the retention pool accumulated stormwater that posed health risks and forced the Reyeses to purchase FEMA flood insurance—both of which plausibly diminished the Premises' economic value. Ultimately, "[t]he degree to which a government regulation has economically impacted a plaintiff is not well-suited to resolution on a motion to dismiss."  Heights Apartments, LLC v. Waltz, 510 F. Supp. 3d 789, 813 (D. Minn. 2020) (citing Naegele Outdoor Advert., Inc. v. City of Durham, 844 F.2d 172, 176–77 (4th Cir. 1988)).  This factor thus weighs against dismissal.

### b.  Investment-Backed Expectations

Defendants argue that the Reyeses have failed to allege whether Criselda Reyes was aware of the problem that spawned the regulation when she purchased the Premises or whether she could have reasonably anticipated the possibility of such regulation in light of the regulatory environment.  If she were so aware, Dorchester County's enforcement of the ordinance should not have run contrary to the Reyeses' investment-backed expectations.  Defendants argue that the amended complaint references a lawsuit filed by the previous homeowners against the developers regarding the same retention pond, meaning that the Reyeses were aware of the issue.  Upon review, however, the court finds that this prior lawsuit merely asserted that the developers wrongfully constructed the home near the pond and that the developers or property owners' association failed to maintain the pond.  See ECF No. 31-1 at 45 ¶ 21–22.  The amended complaint contains no factual allegations suggesting that the Reyeses were provided any indicia that they could not maintain or alter the pond.  Rather, the amended complaint

plausibly alleges that through the Reyeses' due diligence, they had an investment-backed expectation that there were no encumbrances upon the property. For purposes of the motion to dismiss, the court finds that this factor weighs in the Reyeses' favor.

### c.  Character of the Governmental Action

To judge the character of the governmental action, the court may consider, for instance, whether the action "amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." Lingle, 544 U.S. at 539 (internal quotation marks and citation omitted). Defendants eschew this analysis and argue, instead, that Ordinance 07-21 cannot be actionable as a regulatory taking if it comports with South Carolina nuisance law. See also Kelo v. City of New London, 545 U.S. 469, 519–20 (2005) ("Traditional uses of [state police] power, such as the power to abate a nuisance, required no compensation whatsoever."). As defendants acknowledge, South Carolina follows the "common enemy rule," which "allows a landowner to treat surface water as a common enemy and dispose of it as he sees fit." See Silvester v. Spring Valley Country Club, 543 S.E.2d 563, 566 (S.C. Ct. App. 2001) (citing Glenn v. Sch. Dist. No. Five of Anderson Cnty., 366 S.E.2d 47, 49 (S.C. Ct. App. 1988)). However, defendants argue that South Carolina recognizes an exception to this rule: a landowner may not obstruct or alter the flow of water to create a nuisance. See Glenn, 366 S.E.2d at 49. The court finds that the resulting issue of whether the Reyeses created a nuisance is inappropriate to consider at this stage. The amended complaint does not allege—and defendants do not argue—how the Reyeses' actions affected the neighboring properties. See Silvester, 543

S.E.2d at 566 (explaining that under South Carolina law, nuisance is a substantial and unreasonable interference with another's use and enjoyment of property).

Therefore, even if the court departs from the R&R and applies the <u>Penn Central</u> factors, the court denies defendants' motion to dismiss the Reyeses' Fifth and Fourteenth Amendment regulatory taking claim.

### 4. South Carolina Tort Claims Act

Finally, defendants argued in their motion to dismiss that the individual defendants are not proper parties to this action under the South Carolina Tort Claims Act ("SCTCA"). S.C. Code § 15-75-70(a) provides that the SCTCA constitutes "the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." The R&R determined that the SCTCA only limits causes of actions brought against individual defendants in state court. Defendants object, arguing that § 15-75-70 applies in equal force when the venue is federal. Defendants aver that the SCTCA is a legislative vehicle for denoting which claims South Carolina did not waive its sovereign immunity for under the Eleventh Amendment. In other words, defendants argue that the SCTCA provides that if South Carolina or its employees are to be sued, it must be under one of the avenues provided by statute, and a suit in federal court is not among those avenues.

The court finds that the Eleventh Amendment does not apply, rendering the SCTCA inapplicable. It is well settled that "the Eleventh Amendment preserves sovereign immunity of only the States of the Union." <u>Cash v. Granville Cnty. Bd. of Educ.</u>, 242 F.3d 219, 222 (4th Cir. 2001). The Eleventh Amendment does not "afford

protection to political subdivisions such as counties and municipalities, even [where] such entities exercise a 'slice of state power.'" Lake Country Ests., Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1979); see also Cash, 242 F.3d at 222 ("But Eleventh Amendment immunity 'does not extend to counties and similar municipal corporations.'" (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977))). It is true that judges in this district have not directly settled on whether counties in South Carolina are uniquely subject to sovereign immunity. Compare Grant-Davis v. Bd. of Trs. of Charleston Cnty. Pub. Libr., 2016 WL 1445147, at *4 (D.S.C. Mar. 8, 2017), report and recommendation adopted by 2016 WL 1427318 (finding that Eleventh Amendment immunity was not available to the county defendant), with Mickles v. Dozier, 2016 WL 7354527, at *2 (D.S.C. Nov. 7, 2016), report and recommendation adopted by 2016 WL 7324685 (finding that in South Carolina, a county is considered an arm of the state under S.C. Code § 4-1-10, and arms of the state are entitled to Eleventh Amendment Immunity).[9]

The court finds that Dorchester County and its employees, when acting in their official capacities, are not entitled to sovereign immunity. Courts that previously determined that counties were entitled to immunity relied on South Carolina's characterization of a county as a "body politic," see S.C. Code. § 4-1-10, or "political subdivision," Mickles, 2016 WL 7354527, at *2. But neither delineation alters the Supreme Court's finding that counties are not afforded protection under the Eleventh

---

[9] Indeed, the same magistrate judge who determined that counties in South Carolina were arms of the state later issued a report and recommendation in another case stating that "[c]ounties are not entitled to Eleventh Amendment immunity because our courts have held that they are not true arms of the state." Wingate v. Byrd, 2017 WL 10518177, at *5 (D.S.C. Jan. 20, 2017).

Amendment.  Moreover, adopting such an approach would fly against the weight of

authority in this district, as if it were the case that all suits against counties were barred

under sovereign immunity, there would be no need for courts to analyze whether certain

county divisions are arms of the state, as courts have repeatedly done.  See, e.g., Doe

202a v. Cannon, 2018 WL 317818, at *4 (D.S.C. Jan. 8, 2018) (upholding the Fourth

Circuit's application of multi-factor test to determine whether a county sheriff's office is

dominated by the county or state); Grady v. Spartanburg Sch. Dist. Seven, 2014 WL

1159406, at *3 (D.S.C. Mar. 21, 2014) (applying multi-factor test to determine whether a

school district was an arm of the state).  The complaint alleges that the individual

defendants were employees of the county.  Therefore, the court finds that neither

Dorchester County nor the individual defendants are shielded from liability under the

Eleventh Amendment, and to the extent the SCTCA provides narrow grounds for waiving

South Carolina's sovereign immunity, the SCTCA is inapplicable.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS IN PART

AND DENIES IN PART** defendants' motion to dismiss in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 18, 2022
Charleston, South Carolina**